# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CHOPPERS INC. and WILLIAM DAVID
LANE,

               **Plaintiffs,**

-vs-                                **Case No.  6:04-cv-1804-Orl-JGG**

RUSKIN C. PASSARO;  JENNA
SCIMONE; FACTORY DEFECT, INC.;
and SOUTHEAST APPAREL, INC.,

               **Defendants.**

---

## ORDER

    This cause came on for consideration without argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' MOTION FOR FEES, COSTS AND SANCTIONS (Doc. No. 115)** |
| **FILED:** | **November 18, 2005** |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

    Defendants Ruskin Passaro, Jenna Scimone, Factory Defect, Inc., and Southeast Apparels move for an award of attorneys' fees, costs and additional sanctions.  Defendants argue that Plaintiffs and Plaintiffs' counsel, Darren Meacham, have acted in bad faith in refusing to fulfill the terms of the settlement agreement and by engaging in vexatious and harassing motion practice.  Defendants based their motion on the Court's inherent powers and 28 U.S.C. § 1927.

I.     **THE LAW**

A.     **Standard for Attorney's Fees under 28 U.S.C. § 1927**

28 U.S.C. § 1927 governs counsel's liability for excessive costs.  It provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  The word "vexatious" is not defined in the statute.  In such circumstances, courts typically read statutory terms to convey their ordinary meaning.  *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 603 (2001) (relying on definition of "prevailing party" in Black's Law Dictionary).  Black's Law Dictionary defines the term "vexatious" to mean "without reasonable or probable cause or excuse; harassing; annoying."  Black's Law Dictionary 1559 (7th ed. 1999).  It further defines "vexatious suit" to mean a "lawsuit instituted maliciously and without good cause."  *Id.*  Standard English-language dictionaries give the term similar meaning.  *See, e.g.*, Webster's Third New Int'l Dictionary 2548 (3d ed.  1961) (defining "vexatious" to mean  "lacking justification and intended to harass"); 19 Oxford English Dictionary 596 (2d ed.  1989) (defining "vexatious" for legal purposes as "[i]nstituted without sufficient grounds for the purpose of causing trouble or annoyance to the defendant").

There is little case law in the United States Court of Appeals for the Eleventh Circuit articulating the standards applicable to an award of attorneys' fees under § 1927.  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997).  Moreover, decisions from other circuits are not in agreement on the governing principles.  Some circuits have held that subjective bad faith is required

for an award under § 1927. *S. Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986); *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991). Other circuits have held that it is not. *See Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 824 (6th Cir. 2000); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998).

While the Eleventh Circuit has not specifically required a finding of subjective bad faith, it has stated that § 1927 allows district courts to assess attorney's fees against counsel and law firms who willfully abuse the judicial process by "conduct *tantamount* to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (emphasis added); *Roadway Express Inc. v. Piper*, 447 U.S. 752 (1980). *But see Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 n. 6 (11th Cir. 2005) (*"Roadway Express* implies that § 1927 does not requires a specific finding that counsel acted in, or engaged in conduct tantamount to bad faith.")  Additionally, the Eleventh Circuit has agreed with the Ninth Circuit that "[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)).  The Eleventh Circuit has also warned that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan*, 932 F.2d at 1582.

The purpose of § 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them. *O'Rear v. Am. Family Life Assurance Co. of Columbus, Inc.*, 144 F.R.D. 410, 413 (M.D. Fla. 1992).  Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants. . . . It is concerned only with limiting the abuse of court processes." *Roadway Express*, 447 U.S. at 762.

### B.      The "Bad Faith" Standard

The American Rule prohibits fee shifting as a general rule.  *See Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975).  As an exception to the American Rule, however, the district court may award attorneys' fees when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 - 46 (1991); *Alyeska Pipeline*, 421 U.S. at 258 - 59; *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985).  A federal court may exercise its *inherent power* to sanction bad faith misconduct even if that conduct could be sanctioned under a statute or procedural rule*.  See Chambers*, 501 U.S. at 49 - 51.  However, when bad faith conduct in the course of litigation could be adequately sanctioned under the rules, the court ordinarily should rely on the rules and not on its inherent power.  *Id.*

The bad faith exception to the American Rule is not limited to conduct at the moment of filing, but also incorporates bad faith acts preceding and during litigation.  *See Kreager,* 775 F.2d at 1543.  A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *Barnes*, 158 F.3d at 1214.  A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.  *Barnes*, 158 F.3d at 1214.  In assessing whether an award is proper under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *See Rothenberg v. Sec. Mgmt. Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir. 1984).

-4-

The invocation of the court's inherent power to sanction requires a finding of bad faith after the party is afforded a due process opportunity to be heard. *See Chambers,* 501 U.S. at 49; *In re Mroz,* 65 F.3d 1567, 1575 - 76 (11th Cir. 1995). Inherent powers must be exercised with restraint and discretion. *Barnes,* 158 F.3d at 1214. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. 501 U.S. at 44 - 45, 111 S. Ct. at 2132 - 33. *See also Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 23 F.3d 374, 377 - 78 (Fed. Cir. 1994) (recognizing that under certain circumstances a court can award expert witness fees as a sanction pursuant to its inherent power).

### C.    The Amount of an Attorney's Fee Award

Historically, the federal courts have analyzed demands for attorneys' fees pursuant to *Johnson v. Ga. Highway Express,* 488 F.2d 714 (5th Cir. 1974). *Johnson* set forth twelve factors to be considered in calculating a fee award.[1] The United States Court of Appeals for the Eleventh Circuit has consistently refined calculation of awards of attorneys' fees to comport with decisions of the United States Supreme Court. *Norman v. Housing Auth.,* 836 F.2d 1292, 1299 (11th Cir. 1988). *Norman* adopted the lodestar approach for calculating attorneys' fees. The lodestar approach presumptively incorporates the twelve factors adopted in *Johnson,* 488 F.2d 714. *Norman,* 836 F.2d at 1298-99. The Eleventh Circuit applies the lodestar approach of *Norman* in determining a reasonable attorneys' fee. *See Camden I Condo. Assoc., Inc. v. Dunkle,* 946 F.2d 768, 772 (11th Cir.

---

[1]Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717 - 9.

1991); *see also Burlington v. Dague*, 505 U.S. 557, 562 (1992).  Simply stated, the lodestar is the product of the number of reasonable hours expended and the reasonable hourly rate.  *Burlington v. Dague*, 505 U.S. 557, 559-60  (1992) citing *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

The lodestar approach also governs the attorneys' fees analysis under fee-shifting statutes.  *City of Burlington v. Dague*, 505 U.S. 557, 561-62 (1992) (lodestar figure has become the guiding light of our fee-shifting jurisprudence).  This Court therefore applies the *Norman* lodestar approach in determining the parties' request for attorneys' fees.

### 1.    Reasonable Hourly Rate

The Court must first determine the reasonable hourly rate.  *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman,* 836 F.2d at 1299.  The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation.  *Norman*, 836 F.2d at 1299.  The party seeking attorneys' fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates," which normally requires "more than the affidavit of the attorney performing the work."  *Loranger*, 10 F.3d at 781, citing *Norman*, 836 F.2d at 1299.  The court may consider direct evidence of rates for similar services or opinion evidence about rates.  *Norman*, 836 F.2d at 1299.

The Eleventh Circuit looks to skill as the ultimate determinate of compensation level because experience and reputation are a mirror image of skill.  *Norman*, 836 F.2d at 1300.  Skill is evidenced by an attorneys' initial case assessment, continuing negotiation and settlement attempts,

persuasiveness, and other fundamental aspects of organization and efficiency. *Norman*, 836 F.2d at 1300 - 1301. Organization means that counsel plans effective discovery devices and does not use them randomly or for the mere purpose of going through established routines. Efficiency means doing exactly what needs to be done in a minimum time. *Norman*, 836 F.2d at 1301. Legal skill, therefore, correlates to a knowledge of both trial practice and substantive law. *Norman*, 836 F.2d at 1301. Although an attorney who must familiarize himself or herself with either aspect of practice may prove exemplary as an advocate, he or she does not have a right to claim comparable skill to attorneys whose first actions are directed at the finer points of the case. *Norman*, 836 F.2d at 1301. Proficiency should yield efficiency, and the district court has ample discretion to discount the import of counsel's expertise. *Varner v. Century Fin. Co., Inc.*, 738 F.2d 1143, 1149 (11th Cir. 1984). No two attorneys possess the same skill, therefore the Court must look to the range provided by the evidence, and interpolate a reasonable market rate. *Norman*, 836 F.2d at 1300. In summary, the Court determines a reasonable rate by assessing the range of fees established in the marketplace, as modified by reference to an individual attorney's skill. *Norman*, 836 F.2d at 1301; *e.g., Duckworth*, 97 F.3d at 1396.

       2.    <u>Reasonable Hours Expended</u>

The second step in determining the lodestar is to assess the reasonable number of hours expended in the litigation. *Norman*, 836 F.2d at 1302. Inquiry into the reasonable number of hours focuses on the exercise of "billing judgment" — exclusion of those hours not reasonably billable to a client irrespective of counsel's skill, therefore the Court must deduct for redundant hours. *Norman*, 836 F.2d at 1301-02, citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). A court must not

-7-

consider an attorney's skill at this stage as this would constitute a double penalty — the rate would first be decreased and the hours would then be lowered. *Norman*, 836 F.2d at 1301.

The fee applicant bears the burden of documenting the appropriate number of hours. *Norman*, 836 F.2d at 1303, citing *Hensley*, 461 U.S. at 437; *United States v. Blue Cross & Blue Shield of Fla., Inc.*, 882 F. Supp. 166, 170 (M.D. Fla. 1995). Generalized statements concerning reasonableness are of little or no assistance to the Court, instead proof of the hours dedicated to litigation and any corresponding objections must be made with sufficient specificity. *Duckworth*, 97 F.3d at 1397 - 98; *Norman*, 836 F.2d at 1301. Throughout the calculation of the lodestar, the Court remains cognizant that it is itself an expert on the question, and may consider the request in light of its own knowledge and experience with or without the aid of witnesses as to value or hours dedicated to litigation. *Loranger*, 10 F.3d at 781; *Norman*, 836 F.2d at 1303.

If the Court disallows hours, it should identify the hours and explain why the hours are being disallowed. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). If the record is such that the Court cannot expeditiously engage in an hour-by-hour review, such as when the petition is extensive, then this principle does not apply. *Id*. An across-the board percentage cut is appropriate "as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (internal citations omitted). If a percentage cut is used, the Court must adequately articulate its reasons for selecting a percentage. *Id*. Judge Fawsett of this District has approved a 15% reduction where the minimum billing unit used was .25 hours (15 minutes) instead of .10 hours (6 minutes). *Brough v. Imperial Sterling Ltd.*, 2005 U.S. Dist. LEXIS 15439 *31-32 (M.D. Fla. 2005).

## II.   APPLICATION

### A.   Compliance with Local Rule 3.01(g)

Plaintiffs claim that Defendants failed to meet and confer as required by Local Rule 3.01(g), and that the last communication from defense counsel was November 4, 2005.  (The motion was filed on November 18, 2005.)  Plaintiffs admit, however, that on November 4, 2005, a discussion regarding the fees took place and that Plaintiff offered to pay Defendants costs, but that Defendants sought attorneys' fees of approximately $9,000.  Plaintiffs refused to pay that amount claiming that it was unreasonable, and do not state they were willing to pay any fees.  Docket No. 118 at 2.

Defense counsel certifies that he has conferred with Plaintiffs' counsel and was unable to resolve the matter.  The correspondence from defense counsel also shows that Defendants repeatedly warned Plaintiffs and Meacham that they were engaging in sanctionable conduct, and that Defendants would move for attorneys fees if the conduct continued.  See Docket Nos. 115-3, 115-4, 115-5, 115-6.  The Court finds sufficient compliance with Local Rule 3.01(g) to proceed with the merits of the motion.

### B.   Sanctions Against Meacham Pursuant to § 1927

The Court has reviewed the allegations of misconduct since September 12, 2005, the date on which the parties entered their Settlement Agreement on the record.  Without justification, Plaintiffs' have refused to proceed with preparing and signing a written Settlement Agreement.  After missing a hearing, Meacham has filed a meritless motion to rescind the settlement agreement.  Meacham threatened to be deliberately uncooperative with defense counsel if defense counsel did not provide

copies of e-mails Meacham believed were relevant to the motion to rescind.  Such conduct merits § 1927 sanctions against Meacham.

The settlement agreement entered on the record clearly contemplated that the parties would prepare and sign a written agreement and documents verifying Passaro's ownership of certain property. See Transcript of Settlement Conference, Docket No. 97 at 6-7,  10.   Plaintiffs refused to continue with the preparation of the written agreement until Plaintiffs determine whether the inventory is available and resalable.  Docket No. 95 at 3-4.  Conducting an inventory, however, was not a condition of the settlement and Plaintiffs should have assessed whether there was any missing or damaged inventory after taking possession.

Meacham issued an ultimatum to defense counsel on October 18, 2005, demanding that an inspection of the inventory occur before October 21, 2005, or he would file the motion to rescind the settlement agreement.  Docket 155-3.  On October 19, 2005, Defendants agreed to his demand, and informed Meacham that the inspection could occur on October 20, 2005, or the following week.  *Id*. Plaintiffs then refused to make the inspection, claiming insufficient notice was given.  *Id*.

Defendants have introduced evidence that Plaintiffs had no intention of going forward with the inspection, despite Plaintiffs' demand for a firm date for the inspection.  Docket No. 115-6 at 2. Meacham told defense counsel that his client (William Lane) had instructed Meacham to file the motion to rescind the settlement agreement even before Meacham had conveyed his demand for a firm inspection date.  *Id*.  Plaintiffs do not dispute that this occurred. See Docket 119.  Indeed, Meacham filed the motion to rescind the settlement agreement on the very same day that defense counsel acquiesced in Meacham's demand, and provided a firm date for the inspection.  After Meacham filed

-10-

the motion, Defendants continued their efforts to schedule the inspection, but the Plaintiffs still refused to proceed.   Docket Nos. 115-4, 115-5, 115-6, 115-8, 115-9.  The inspection appears to be the only impediment to Plaintiffs finalizing the written confirmation of the settlement, yet Plaintiffs refused to agree to an inspection date.

Mecham argues that the motion to rescind cannot be considered vexatious because the Court retained jurisdiction to enforce the settlement agreement and allowed for the possibility of reopening the case.  Docket No. 119 at 9.  Meacham is wrong.  The Court's retention of jurisdiction does not give Meacham *carte blanche* to pursue baseless motions.  Further, Plaintiffs were uninterested in working things out with Defendants, but Meacham seems to wish to avoid the agreement that his clients had made.  First, Meacham claims to have followed his client's direction to file a baseless motion to rescind the settlement agreement.  Second, Meacham told defense counsel that there is no longer a settlement agreement (Docket No. 115-6 at 1).  Third, Plaintiffs refuse to proceed with the inspection.

Meacham has a professional responsibility to file only motions that are justified and not to blindly accede to his client's demands.  Meacham's demand for firm date for an inspection, knowing that his client did not intend to conduct the inspection, and knowing he would file the motion to rescind the settlement agreement regardless of Defendants' agreement to inspect is conduct tantamount to bad faith.  Bad faith also is suggested by Meacham's subsequent threats to be purposefully uncooperative if he did not receive documents he wanted from defense counsel.

Based on these facts, the Court finds that Meacham's actions in bringing and maintaining the motion to rescind the settlement agreement was unreasonable and vexatious within the meaning of

-11-

§ 1927.  Defendants, therefore, are entitled to an award of reasonable fees and costs related to responding to the motion to rescind the settlement and for preparing this fee application.

Defendants bear the burden of producing satisfactory evidence that their requested billing rates are in line with prevailing market rates.  Defendants have not done so.  The Attorney Fee Affidavit merely states that defense counsel Gustavo Gutierrez is an associate at the Law Offices of Martin B. Kofsky.  Docket 115-11.  Defendants seek an hourly rate of $180.00 for Mr. Gutierrez and $250.00 for Mr. Kofsky.  According to the Florida Bar website, Mr. Gutierrez was admitted to the bar on July 22, 2004, and Mr. Kofsky was admitted on September 28, 1992.  The Court, using its expertise in this area, nevertheless determines that the rates sought by defense counsel are reasonable.

Although a supervising partner may need to review underlying documents and motions to assess the quality of work performed by an inexperienced associate, it is unreasonable for the Court to compensate defense counsel for duplicative work.  Where work appears to be duplicative or substantial time is spent by a partner revising an associate's work, the Court will only count the hours billed by the associate.  The Court has reviewed defense counsel's billing statement attached as Exhibit B to the Attorney Fee Affidavit and has made the appropriate deductions.  Because most of the time entries are in larger increments, the concern about excessive billing through use of .25 hour increments is not present.  Therefore, the Court finds no basis to further reduce the fee award.  Fees in the amount of $7,335, therefore, are approved.

Plaintiffs do not dispute the costs related to defense counsel's appearance at the hearing on the motion to rescind the settlement agreement, and the Court finds the costs are reasonable.  *See e.g., Woodfork By and Through Houston v. Gavin,* 105 F.R.D. 100, 106 (N.D. Miss.1985) (approving

pursuant to §1927, travel expenses, meals and overnight lodging expenses associated with the hearing).  Costs in the amount of $337.47, therefore, are approved.

### C.      Sanctions Pursuant to the Court's Inherent Authority

The Court finds that Meacham's sanction under § 1927 is adequate, and declines to rely on its inherent power to order additional sanctions against Choppers, Inc. and Lane.

### CONCLUSION

Defendants' motion for attorneys' fees and costs is granted pursuant to § 1927 for the unreasonable and vexatious filing of the motion to rescind the settlement agreement.  Plaintiffs' counsel, Darren Meacham, is ordered to pay to Defendants $7,672.47 in attorneys' fees and costs. Payment shall be made on or before January 19, 2006.

**DONE** and **ORDERED** in Orlando, Florida on December 9, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-13-